United States District Court
District of Massachusetts

| | |
|---|---|
| Ulas Avci; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 14-12654-NMG |
| Megan L. Brennan, Postmaster | ) |
| General, United States Postal | ) |
| Service; | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves allegations of employment discrimination and failure to ameliorate a hostile work environment. Plaintiff Ulas Avci ("Avci" or "plaintiff"), proceeding pro se, claims that Megan L. Brennan, Postmaster General, United States Postal Service ("Postal Service" or "defendant") unlawfully discriminated against him on the basis of race and national origin when Avci was not hired as a Postal Support Employee Custodian. In addition, Avci alleges that, during the time he was employed by the Postal Service, he was subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. Defendant's motion for summary judgment is currently pending before the Court.

I. **Background:**

Avci is a naturalized United States citizen who describes himself as "a Kurdish American from Turkey". From sometime in 2010 until August, 2011, he was employed by the Postal Service as a "Casual – Maintenance Building Services Custodian" at the Brockton Processing and Distribution Center in Brockton, Massachusetts ("the Brockton facility").[1] Avci resided in Brockton at that time.

In July, 2011, plaintiff applied for the position of Postal Support Employee ("PSE") Custodian in Brockton. He took the applicable assessment examination and obtained a score of 88/100, which placed him seventh out of seven applicants on defendant's hiring list.

In August, 2011, the Postal Service terminated the employment of all Casual – Maintenance Building Services Custodians nationwide, including Mr. Avci. In September, 2011, plaintiff moved to Germany and ultimately returned to Turkey.

The dispute in this case focuses on defendant's purported attempt to rehire plaintiff for the position of PSE Custodian in Brockton after the nationwide Casual Custodian lay-off.

Avci provided his cell phone number on his employment application. Joseph A. Campbell, the Supervisor of Maintenance

---

[1] Defendant asserts that plaintiff's employment began in October, 2010. Plaintiff submits that his employment began in January, 2010. This dispute is irrelevant to plaintiff's legal claims.

Operations at the Brockton facility, who was plaintiff's immediate supervisor while he was a Casual Custodian at that facility, attempted to reach plaintiff by telephone. Avci and the Postal Service disagree about what happened next. Defendant submits that Campbell attempted to contact plaintiff by calling him on his cell phone. Avci notes that Campbell did not call the number he listed on his application. Defendant's extension detail report confirms that Campbell did not dial plaintiff's number. As stated in defendant's memorandum in support of its motion for summary judgment,

> Campbell attempted to contact all of the applicants on the Hiring List by telephone and/or email.

That is not quite Campbell's recollection. In the EEO Investigative Affidavit, Campbell stated that "all PSE candidate were contacted via phone/email."

Defendant also maintains that one of Avci's co-workers, Alan Voll, unsuccessfully attempted to contact him. Plaintiff insists that he did not receive a call and correctly notes that "there is no record of [the call] and the co-worker is not an official."

In March, 2012, Tony McGuire, defendant's Manager of Maintenance Operations for the Boston Processing and Distribution Center emailed plaintiff to schedule an interview for the PSE Custodian job. McGuire contends that Avci would

have been hired as a PSE Custodian at the Brockton facility if Avci had completed the interview process. Defendant avers that Avci declined the interview although it provides no record of that communication. Plaintiff disputes that contention.

Plaintiff claims he was discriminated against when the Postal Service intentionally avoided contacting him about the PSE Custodian interview because of his Turkish national origin. As plaintiff tells it, 1) he provided his phone number on the job application, 2) Campbell intentionally dialed the wrong phone number because of his bias against the plaintiff and 3) plaintiff's co-worker also failed to contact him about the interview for the same reason. Finally, Avci maintains that the interview email he received was a "deliberate effort by defendant to mislead the EEO investigation." Avci was eligible for employment at the Brockton facility, not the Boston facility, he explains, so that email was merely a ruse.

### Procedural Background

Plaintiff's second amended complaint contains a plethora of counts. They include: 1) civil rights violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq ; 2) violations of EEOC guidelines; 3) civil rights violations under M.G.L. c. 151B; 4) criminal forgery under M.G.L. c. 267 § 1-5; 5) forgery under the Immigration and Nationality Act, 8 U.S.C. § 1324(c); 6) civil rights violations under the Civil

Rights Act of 1991, 42 U.S.C. § 1981; 7) violations of USPS policy; 8) perjury under 18 U.S.C. § 1621; 9) an equal protection violation under the Fourteenth Amendment; 10) intentional infliction of emotional distress; 11) interference with employment and 12) equal rights violations under M.G.L. c. 93, § 102(a).

A "document filed pro se is to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). Accordingly, reading the second amended complaint in the light most favorable to the plaintiff, the Court understands count I to constitute two claims: a claim for discrimination in hiring and a claim for hostile work environment.

Pending before the Court is the Postal Service's motion for summary judgment.

## II. Motion for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### A. Count I - Failure-to-hire claim

Avci alleges that the Postal Service refused to hire him for the position of PSE Custodian at the Brockton facility because of his Turkish race and national origin.

Under Title VII, it is unlawful for an employer

> to fail or refuse to hire . . . any individual, . . . because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a).

Where, as here, there is no direct evidence of discriminatory intent, a court employs the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996).

Under McDonnell Douglas, the burden falls initially to a plaintiff to set forth a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. A properly-established prima facie case gives rise to an inference of intentional discrimination. See Ingram v. Brink's, Inc., 414 F.3d 222, 230 (1st Cir. 2005). The burden then shifts to the employer to provide a legitimate, nondiscriminatory reason for its decision. Id. If the employer does so, the burden of production returns to the plaintiff, who must then prove that "the employer's neutral reasons were actually a pretext for the alleged discrimination." Id.

To establish a prima facie case for a failure-to-hire claim a plaintiff must show that

> she is a member of a protected class, (2) she was qualified for an open position for which she applied, (3) she was rejected, and (4) someone possessing similar qualifications filled the position instead.

Id.

As an initial matter, it appears that the Postal Service misapprehends Avci's claim. It sets forth an incorrect standard

-7-

for a prima facie case of discrimination in a failure-to-hire claim. See, e.g., Bennett v. Capitol BC Restaurants, LLC, 54 F. Supp. 3d 139, 147 (D. Mass. 2014) (distinguishing prima facie standard for discrimination in hiring from prima facie standard for discrimination in termination).

Second, defendant confuses the plaintiff's burden at the first stage of the McDonnell Douglas framework. According to defendant, plaintiff failed to make out a prima facie case because he "failed to name a similarly situated comparator outside of his own race." That argument is unsupported by law and doesn't make sense.

The parties agree that Mr. Avci was the only Turkish employee at the Brockton facility. According to the Postmaster General's theory, such a plaintiff cannot maintain a racial discrimination action under Title VII. That is not so.

> [A] plaintiff need not show as part of his prima facie case that the employer either recalled similarly situated non-minority employees or otherwise treated employees of different ethnic backgrounds more favorably.

Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003) (citation omitted); see also Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008) ("[I]n disparate treatment cases, comparative evidence is to be treated as part of the pretext analysis, and not as part of the plaintiff's prima facie case . . . .") (quoting Kosereis, 331 F.3d at 213); see generally

Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001) (discussing ad absurdum examples of employees who are "in a class all by themselves").

Nevertheless, plaintiff has failed to establish a prima facie case of discrimination in hiring. According to plaintiff's own admission, he never completed the application process for the CTE Custodian position. A genuine issue of material fact exists as to whether Campbell intentionally called the wrong number and whether Alan Voll, plaintiff's co-worker, attempted to contact him. Plaintiff acknowledges, however, that he received Tony McGuire's interview invitation on March 7, 2012. Avci maintains that that request was "a deliberate effort by defendant to mislead the EEOC investigation" but conceded that he misread the email.

Plaintiff explains that he applied and was qualified for the position in the Brockton facility and that he was not eligible for and "not even on the PSE Custodian hiring list for Boston." McGuire's email did not offer a position in Boston. The email stated that the interview would take place in Boston. Because of this misunderstanding, perhaps due to a language problem, plaintiff did not attend the interview. Accordingly, plaintiff never completed the application process for the position and therefore did not "apply" to be a PSE Custodian in the Brockton facility.

Because he did not establish that he "applied for a particular position", plaintiff has failed to establish a prima facie case of failure to hire. See Vélez v. Janssen Ortho, LLC, 467 F.3d 802, 807 (1st Cir.2006).

Defendant's motion for summary judgment will, with respect to plaintiff's claim of discrimination in hiring, be allowed.

**B. Count II - Hostile Work Environment**

To establish a prima facie case of a hostile work environment, the plaintiff must show that

> (1) he is a member of a protected class; (2) he experienced uninvited harassment; (3) the harassment was racially-based [or based on national origin]; (4) the harassment was so severe or pervasive as to create an abusive work environment; and (5) the harassment was objectively and subjectively offensive.

Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008).

Plaintiff, as the nonmovant, must identify "specific facts sufficient to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Plaintiff has failed to produce those specific facts. Some disputed facts that he points to, such as Campbell's alleged misinformation about his phone number, while relevant to Avci's failure-to-hire claim, do not constitute severe or pervasive harassment.

A nonmoving party must produce more than "conclusory allegations, improbable inferences, acrimonious invective, or

-10-

rank speculation." Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010). Avci alleges facts sufficient to constitute a claim of hostile work environment in his complaint but his burden at the summary judgment stage is higher. Facts must be "set forth in affidavits, depositions and the like." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005). Plaintiff has not done so.

Although the record consists of over 900 pages, plaintiff failed to identify any specific facts demonstrating the existence of a hostile work environment in his opposition to defendant's motion for summary judgment. Because Avci has failed to "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue," summary judgment for the Postal Service is appropriate. See Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal citation omitted).

The record includes EEOC investigative affidavits submitted in May and June of 2012 by plaintiff, Campbell, Manager of Maintenance Operations Emilia Keefe, Human Resources Generalist Patricia Barnard and co-worker Alan Voll. Those affidavits are limited to a discussion of the failure-to-hire claim. None discusses alleged harassment in the workplace. Plaintiff describes incidents of alleged harassment in the pre-complaint

stage of the EEOC process. The EEOC investigation, however, was limited to the alleged discriminatory failure-to-hire claim.

Because plaintiff has failed to set forth specific facts establishing pervasive harassment, he has failed to set out a prima facie case of hostile work environment.

Defendant's motion for summary judgment will, with respect to plaintiff's hostile work environment claim, be allowed.

### C. Counts II-XII

Title VII requires an employee to file a charge with the EEOC before commencing a civil action. See 42 U.S.C. § 2000e-5(f). To provide the employer notice and an opportunity to take necessary corrective action, the civil complaint is then limited to "the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of the charge." Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009) (quoting Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)). Where the plaintiff proceeds pro se, the charge is "liberally construed in order to afford the complainant the benefit of any reasonable doubt." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

The EEOC understood plaintiff's complaint to be limited to his failure-to-hire claim. This Court has liberally construed plaintiff's administrative charge to include a hostile work environment claim. Counts II through XII of plaintiff's second

amended complaint are not, however, related to or supported by his EEOC complaint. Pro se status

> does not relieve an employee of the obligation to meet procedural requirements established by law . . . [and] [e]ven a pro se complainant is required to describe the essential nature of the claim . . .

Id. Plaintiffs, no matter their status, must identify the basic facts on which their claims rest. See id.

Because plaintiff failed to raise in his EEOC complaint allegations related to Counts II-XII of the second amended complaint, he may not raise them now.

Defendant's motion for summary judgment will, with respect to Counts II-XII, be allowed.

### ORDER

For the foregoing reasons, defendant's motion for summary judgment (Docket No. 93) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated January 16, 2018